# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 23, 1916.

ELIZABETH M. WILLIAMS, AND WILLIAM P. CHUNN
VS.
MAYOR AND CITY COUNCIL OF BALTIMORE, JAMES F. THRIFT, COMPTROLLER, AND RICHARD GWINN, CITY REGISTER.

*Bartlett, Poe & Claggett* for plaintiffs.

*S. S. Field,* City Solicitor, for defendants.

BOND, J.—

This is a suit by taxpayers to restrain an unlawful use of a special public fund and acquisition of property for a use not within the powers of the city government. In pursuance of an ordinance, approved on March 13th, 1915, No. 586, the city officials are proceeding with a plan to acquire property extending north of the Court House, from Lexington street to Hamilton street, between St. Paul and Courtland streets, and upon that ground to construct a wide, double highway with a parked bank between the two passageways. Much stress is laid in the bill upon a reported plan to utilize the intervening space by the construction of a public garage upon it. It appears from the evidence, however, that such a plan, though suggested, has never been adopted; so that even if it be an unlawful plan it is not so threatened that a court may be called upon to issue an injunction against it. That ground of complaint may, therefore, be dismissed from consideration at the outset. The city officials testify that improvement as a parked highway merely is now intended. Accepting that assurance and proceeding with the plan thus described, it is not contended by the plaintiffs that such a highway improvement is beyond all powers of the city. It is unquestionably within its powers, under proper proceedings and by means of proper funds. The plaintiffs contend only that in this instance the city is attempting to proceed under the wrong authority, misusing the funds there provided for other purposes exclusively.

The General Assembly of 1910, Chapter 485, gave the city power to raise a special fund to be known as the "Harbor Improvement Fund"; and it is with funds raised in pursuance of this authority that the city is undertaking to make the improvement here described. To the protest of the plaintiffs, that this would be a use beyond that designated for the fund, the city officials answer that the fund is resorted to for a harbor improvement within the meaning of the Act, in that St. Paul street is a street leading to the wharves and that its improvement as planned is within such a comprehensive scheme of harbor improvement as is designated in the Act. The plaintiffs say this construction of the statute is forced and impossible. And in argument they further reply that even if a widening of St. Paul street in this section should be within the improvement authorized, yet in the construction of the double parked highway as planned the element of harbor improvement would have mounted upon it a great, unrelated scheme for a local improvement to that section of the city, and so would still

involve a misuse of the special fund. This question I shall consider first, deferring the construction of the statute.

Assuming, then, that the statute may reasonably be constructed to authorize a widened highway at this point, may the court enjoin the present project merely because it is enlarged beyond any change that may effect the purposes of the statute? Not merely because there is some such enlargement, I think. Speaking abstractly, it is true that an improvement may be so expanded that it will constitute a departure from the authority originally given for it. At just what point in the expansion this departure will occur it would ordinarily be impossible to say; and as each such question arises a court must use its judgment on the full facts. It is to be borne in mind, however, that here, as usual, the extent of a change and improvement which is required to accomplish the purposes of the statute is left to the judgment of city officials. Therefore, the court can be concerned only with clear departures from the legislative purpose.

Now it seems unquestionable that the present project involves a widening at this point far beyond any possible usefulness as a means of communication with the territory beyond. The new open space would be three or four times as wide as the passages from it at either end; would be like a bay lying at the side of a channel. Yet the officials offer practical reasons for this. They say that as this whole site is on the side of a steep hill, St. Paul street can be widened only by adopting one of two unusual expedients. There must, they say, be a high and expensive retaining wall built all along the east side upon the land now covered by houses; or Courtland street must be used as part of the new highway, with some modification of the half block of ground between. And they say that in their judgment the latter plan is practically the better one. These are men of trained judgment, and for that reason elected to serve the public in such matters; and a court must assume, as long as it continues possible to do so, that they have given their best endeavors to the problems. I think it impossible for the court to say they have not done so in this case, or that they have clearly exceeded their authority in the choice of a means to the end prescribed. Therefore, an injunc-

tion will not be issued merely because the widening as planned is too great.

There is another consideration which tends to strengthen this conclusion. Nowadays there is a general and recognized need for great improvement in the plans and construction of cities; and nobody, I take it, would dispute the propriety of some extension of improvements beyond the requirements of immediate utility. It may well be urged that when authority is given for the widening or opening of a street there is implied in it authority to make some adaptation of the improvement to its neighborhood, as the neighborhood is now or as it is expected to be in the future, even though the primary objects of the statute can be accomplished without it.

Coming finally to the consideration of the statute. Can this improvement be brought within the authority given by it, and so be made by means of the "Harbor Improvment Fund" for which it provides?

The title of the statute contains an unusually detailed statement of the purposes for which the fund is to be used; and it seems to me to be of more than usual importance. A title is at most only a subordinate, explanatory part of legislative enactment. Yet whenever the main provisions leave some latitude of construction the title "is deemed to occupy so important an office in a statute as to be called the key to its construction." Canal Co. case, 4 G. & J. 1, 91. In this instance the title contains substantially an epitome of later detailed provisions, the powers it specifies as included being successively repeated with some elaboration in Subsections 3, 4, 5, 6 and 7 of Section 2. And the two municipal ordinances passed in pursuance of the statute, No. 557, approved June 13th, 1910, and No. 518, approved October 3rd, 1914, have both copied from the title a description of the scope and effect of the statute and of the work in furtherance of which the ordinances have been passed.

The main purpose stated in the title is that "of defraying the costs and expenses of laying out, projecting, constructing and establishing a pier or piers." And this is followed by a statement that there is included, roughly speaking, the acquisition of property and streets, the alteration and construction of wharves, the laying out of

new streets, cleaning the harbor or basin and the channels, and fixing buoys, "and," it continues, "the doing of all other things that may be necessary to carry out the proper and final completion of a pier or piers, adjacent to and along the Patapsco River and its tributaries." And the Mayor and City Council of Baltimore, it concludes, is to be clothed "with full power and authority to carry into effect the improvements and public work mentioned."

Section 1 provides for the raising of "a special fund to be known as the 'Harbor Improvement Fund.'"

Section 2 provides for the use of that fund. It shall be "exclusively applicable to and used for the laying out, projecting, constructing and establishing of a comprehensive system for the improvement of the water-front of, adjacent to and along, the Patapsco River and its tributaries." Then follow in subsections the statements of special works which shall be included, among other things. Subsections 1 and 2 concern the laying out, planning and organizing of the "said improvements" and the "improvement for the water-front, harbor and basin as may be best calculated to promote the improvements contemplated by this Act." Subsection 3 concerns the acquisition of property and streets, and Subsection 4 concerns the alteration and construction of wharves. Subsection 5 provides for the inclusion of "the laying out, opening, extending, widening, narrowing, straightening, closing * * * of any of the streets, avenues, lanes and alleys or parts thereof adjacent to or leading to, or along said water-front, or leading, adjacent to or along or being upon, any of the public wharves * * * * whether such streets, avenues, lanes or alleys or parts thereof may be within the limits of the City of Baltimore, and the establishment and fixing of the building lines thereon and the width of the sidewalks thereof, all as may be proper or desirable in connection with the objects of this Act."

Subsequent sections provide for widening channels, cleaning the harbor or basin, and fixing buoys. This enumeration of special objects and purposes it is expressly provided "shall not be taken or construed as restricting or impairing, in any degree, the scope of the general objects and purposes hereinbefore mentioned as con-

templated by this Act." The City is given power "to do any and all things which, by anything short of a palpably forced construction, it may deem desirable, convenient or proper to further and accomplish the objects of this Act or any of them"; and especially to rent wharves and piers."

Section 6 provides that except in respect to the function of renting piers and wharves, and the proceedings for condemnation, "each and all of the rights and powers hereby conferred shall be exercised, and the work herein provided for shall be executed by the Harbor Board."

It seems to me that anyone who starts with common knowledge of the geographical situation, and reads the statute through, with each provision in its place in the context, can come to but one construction. The statute provides funds for a water-front, or harbor improvement. It does not provide for any improvement of the City with relation to the harbor, or any improvement of communication between the water-front and the railroad stations uptown.

As has been seen, the two general statements of the purposes for which the money may be expended are: "for the purposes of defraying the costs, etc., of a pier or piers adjacent to and along the Patapsco river," and "for laying out, etc., of a comprehensive system for the improvement of the water-front of, adjacent to and along, the Paptasco river." And the execution of the work is devolved upon the Harbor Board, the functions of which, as defined in the City Charter (Section 38) are to "have charge of the harbor, wharves, and navigable waters, including bridges over same, in and adjacent to the City of Baltimore."

The harbor is not all within the limits of the City; a most important section of it is in Canton and beyond, in Baltimore County. So the pier or piers are to be constructed "both within (and without) the limits of the City of Baltimore." The word "without" has been omitted in several places where the limits of the City are mentioned, but the omission is obvious, and, I understand, conceded in argument. So, again, the "comprehensive system for the improvement of the water-front of, adjacent to and along, the Patapsco river and its tributaries" is to be "both with-

in (and without) the limits of the City of Baltimore."

In order that the piers, or other structures, may be complete, and fulfill their function of transfer, deep water must be given to them for the boats, and street room must be given for the land vehicles. So we find provision made for enlarging "channels of the harbor or basin of the City of Baltimore, whether within (or without) the limits of said city." And, according to the construction that seems to me to be the only permissible one, we find provision for improvement, on the land side, of whatever may be needed of streets; of those running along or adjacent to the wharves or of those which neither run along nor adjacent to them but come in at angles. In this reference to streets "leading to" the wharves as contrasted with those which run along or adjacent to them, the statute seems to me clearly to intend including in the improvements only the heads or ends of those streets of which only the heads or ends come to the piers or the water-front. The main objects are well defined. Piers are to be built; the water-front is to be improved; and all these specifically enumerated works are means to those ends. The Legislature is concerned only that they "shall not be taken or construed as restricting or impairing in any degree the scope of the general objects and purposes hereinbefore mentioned."

The city officials seem to me to have arrived at an erroneous construction by lifting words and phrases from the context and then construing them independently. The full possibilities from that treatment help to show its fallacy. If we put aside the definition of the purposes to be accomplished, the grouped descriptions of streets to be affected, and the context generally, we shall be unhampered in including this part of St. Paul street leading to the wharves, and so within the contemplated improvement, if the city officials deem it proper. But by the same independent treatment any other street in the City, or outside of it, might be included, a street in Walbrook or in Towson, for instance; the judgment of the officials being the only criterion.

And if in its reference to streets outside the limits of the City the Legislature intended that the officials might use the fund on streets away from the harbor and so beyond the limits, then by the same construction channels down the bay might be widened and deepened by the use of this money. The size of the fund would render such far-reaching improvement out of the question. But even more clearly, I think, does the statement of the Legislature's purposes to construct piers and improve the water-front of, adjacent to and along, the Patapsco river and its tributaries, prohibit it.

Lastly, the defendants call attention to the provision that the Mayor and City Council is given full power "to do any and all things which, by anything short of a palpably forced construction, it may deem desirable, convenient or proper to further and accomplish the objects of this Act or any of them." It is sufficient, I think, to answer that the controversy is upon the definition of the objects of the Act. The officials of the City testify that in their judgment the opening up of the highway on St. Paul street as planned will be beneficial in that it will improve communication between Union, Bolton and Calvert Stations on the one hand, and the harbor on the other. That object, I conclude, could not be brought within the objects of the Act except by a palpably forced construction. And, without further discussion, it seems sufficiently clear that the Act did not intend to give the city officials power to spend the fund upon objects outside of those to which the Act had already said the fund should be exclusively applicable.

A decree granting the injunction prayed will be signed when presented.